In the Matter of ALEXANDER W. BODNAR, Appellant, v NEW YORK STATE THRUWAY AUTHORITY, Respondent.

Third Department, June 3, 1976

*Chester S. Mandel* for appellant.

*Louis J. Lefkowitz, Attorney-General (William J. Kogan* and *Ruth Kessler Toch* of counsel), for respondent.

MAHONEY, J. Petitioner was a tenured employee of the New York State Thruway Authority (hereinafter Authority) holding the position of toll collector. On February 19, 1973, at the end of his shift at the Spring Valley Interchange, he was stricken by what was apparently a *grand mal* seizure. He was hospitalized and released therefrom on the same day, although he remained in the care of Dr. Lestch until February

23, 1973. On February 29, 1973 Dr. Lestch informed the Authority by letter that petitioner "may return to work as of March 1, 1973." When asked for a formal diagnosis of petitioner, Dr. Lestch replied in writing on March 8, 1973 that his diagnosis was "seizure disorder". On April 2, 1973 the respondent's Personnel Director informed petitioner by letter that following written consultation with Dr. Lestch (presumably the two letters from Dr. Lestch referred to above and the admissions record of the hospital) he would not be permitted to return to work. On May 11, 1973 the Personnel Director informed petitioner that he was being placed on leave of absence without pay until February 19, 1974 at which time "you will be terminated from your position in accordance with section 73 of the Civil Service Law which provides for termination of an employee absent for one year or more by reason of disability." During the next eight months the petitioner supplied the Authority with three additional medical reports from three different neurologists supportive of his contention that he was physically able to return to work. In connection with such submissions he demanded that the Authority cause him to be physically examined by physicians retained by the Authority, as was his right both under the terms of his union contract with his employer and the provisions of section 73 of the Civil Service Law. The uniform response of the Authority and the Employee Health Service Unit was that due to his medical condition he would not be reinstated. Finally, by letter dated February 19, 1974 petitioner was advised that since he had been continuously absent from and unable to perform his duties for a period of one year due to his disability, he had been terminated pursuant to section 73 of the Civil Service Law.

An examination of section 73 clearly indicates that while the Authority may terminate the employment status of an employee who has been continuously absent for one year or more by disability, it does not authorize the imposition of an involuntary leave of absence. The obvious intent of section 73 is to provide a method of severance in order to free a job position without prejudicing the employee's future by the institution of disciplinary proceedings under section 75 for incompetency. (Memorandum of the State Department of Civil Service, regarding L 1965, ch 508; NY Legis Ann, 1965, pp 91-92.) It was not intended to provide a State employer with tools to fashion a job severance when that employer, without a

requisite physical examination, decided, unilaterally that such an examination would be fruitless, particularly where, as here, the medical evidence relied upon is to the contrary. Dr. Lestch, petitioner's personal physician, and three other doctors, after physical examinations of petitioner and review of Dr. Lestch's records, all concluded that the seizure was an isolated episode and that petitioner was able to return to work. For the Authority to refuse to accede to petitioner's demand for a physical by respondent's doctor, required by the provisions of section 73, is both an arbitrary and illegal act requiring annulment and reversal of the judgment below. Under the facts herein section 73 does not apply to petitioner. His continuous one-year absence from his job was not because of a continuing disability, but, rather, was forced upon him by the Authority's misuse of section 73 in imposing an involuntary leave of absence. The Authority refused to permit petitioner to return to work and was without warrant or authority to require him to take an involuntary leave of absence without pay.

The position of the respondent Authority is not altered by its attempt, for the first time at oral argument before us and in its brief, to justify its conduct by utilizing section 72 with section 73 of the Civil Service Law. The former section is almost exclusively employed when the cause of a disability is mental rather than physical (*Matter of Brockman v Skidmore*, 43 AD2d 572). Further, section 72 authorizes the appointing authority to place an employee on a leave of absence when a medical officer selected by the Civil Service Department has certified that the employee is not mentally fit to perform the duties of his position (Civil Service Law, § 72, subd 1). In this case the disability was not mental, there was no certification, and, indeed, there was no physical examination of any kind conducted by a medical officer of the respondent.

The judgment should be reversed, on the law and the facts, without costs; petitioner reinstated to his former position of toll collector and matter remitted to Special Term for the determination of back pay, if any, from March 1, 1973, the date he was certified as able to return to his duties, less any earnings petitioner may have had from other employment during the period in question.

KOREMAN, P. J., MAIN, LARKIN and HERLIHY, JJ., concur.

Judgment reversed, on the law and the facts, without costs;

petitioner reinstated to his former position of toll collector and matter remitted to Special Term for the determination of back pay, if any, from March 1, 1973, the date he was certified as able to return to his duties, less any earnings petitioner may have had from other employment during the period in question.