In the Matter of LEONARD ECONOMICO, Respondent-Appellant,
v VILLAGE OF PELHAM, Appellant-Respondent.

Second Department, April 9, 1979

APPEARANCES OF COUNSEL

*Murray Steyer (Marvin S. Fink* of counsel), for appellant-respondent.

*Frederick J. Adler* for respondent-appellant.

## OPINION OF THE COURT

O'CONNOR, J.

■ ■ The primary question presented by this appeal is whether it was a denial of due process for the Village of Pelham to dismiss petitioner pursuant to section 73 of the Civil Service Law, without a hearing, after he had been continuously absent from his position for a period in excess of 18 months as a result of a nonservice related disability. A secondary issue is whether the collective bargaining agreement governing the employer-employee relationship between the parties barred petitioner's dismissal. We hold that the failure to conduct a hearing was not a denial of due process and that there was no contractual bar to his dismissal. Accordingly, the judgment appealed from should be reversed, on the law, and the proceeding dismissed. The cross appeal should be dismissed, as academic.

### THE FACTS

Petitioner began working as a patrolman for the Village of Pelham on January 1, 1971. On January 27, 1976 he was placed on sick leave, with pay, after suffering injuries in an automobile accident which was not related to his employment. He was ordered by the Chief of Police to report back to work as of October 25, 1976, some nine months after he went on sick leave, but he refused to comply, claiming that he was still physically unfit for duty. He was then dismissed because of his refusal to report, and there followed a grievance procedure brought pursuant to article XVI of the collective bargaining agreement, which provided:

"ARTICLE XVI—SICK LEAVE.

"1. An employee who is sick or injured *may have unlimited leave with pay,* subject to the right of the Village to deny or discontinue pay to any employee who is capable of working or whose absence is caused by an injury incurred while working for another employer" (emphasis added).

A contested arbitration hearing ensued and, by decision

dated July 6, 1977, the arbitrator concluded that the village had improperly discontinued petitioner's sick leave pay effective October 25, 1976 and directed that he be paid all such moneys due him to date. It is noted that on the following day, July 7, in a companion but separate action between these litigants, Special Term ruled that petitioner could not only collect his total sick leave pay, but, because of the absence of any statutory or contractual bar to double recovery, he could also retain any sums collected under the no-fault provisions of his automobile insurance policy.

By resolution dated August 2, 1977, almost 18 months after petitioner became disabled, the village's board of trustees terminated his employment as a member of the police department predicated upon his continuing nonservice connected disability. In September, 1977 petitioner initiated this CPLR article 78 proceeding, arguing that he had been denied due process in that he had not been afforded a hearing prior to his dismissal and, further, that his dismissal was violative of article XVI of the collective bargaining agreement which entitled him to unlimited sick leave. It is significant that, although in his prayer for relief he sought reinstatement, petitioner did not offer to return to active duty but, rather, *demanded that he be immediately restored to sick leave status.** In its answer, the village urged that because of petitioner's continued claim of physical disability a pretermination hearing was not required and, further, that the collective bargaining provision granting unlimited sick leave for a nonservice related disability was clearly contrary to public policy. The village contends, therefore, that petitioner was properly dismissed pursuant to section 73 of the Civil Service Law.

THE STATUTE

Section 73 of the Civil Service Law provides:

"Separation for ordinary disability; reinstatement.

"When an employee has been continuously absent from and unable to perform the duties of his position for one year or more by reason of a disability, other than a disability resulting from occupational injury or disease as defined in the

---

· * Although the statement was made a month after the village's resolution to terminate, it is highly indicative of petitioner's persistent claim of continuing disability.

workmen's compensation law, his employment status may be terminated and his position may be filled by a permanent appointment. Such employee may, within one year after the termination of such disability, make application to the civil service department or municipal commission having jurisdiction over the position last held by such employee for a medical examination to be conducted by a medical officer selected for that purpose by such department or commission. If, upon such medical examination, such medical officer shall certify that such person is physically and mentally fit to perform the duties of his former position, he shall be reinstated to his former position, if vacant, or to a vacancy in a similar position or a position in a lower grade in the same occupational field in his former department or agency. If no appropriate vacancy shall exist to which such reinstatement may be made, or if the work load does not warrant the filling of such vacancy, the name of such person shall be placed on a preferred list for his former position in his former department or agency, and he shall be eligible for reinstatement in his former department or agency from such preferred list for a period of four years. In the event that such person is reinstated to a position in a grade lower than that of his former position, his name shall be placed on the preferred eligible list for his former position or any similar position in his former department or agency. This section shall not be deemed to modify or supersede any other provisions of law applicable to the re-employment of persons retired from the public service on account of disability."

SPECIAL TERM'S DECISION

Special Term ruled that petitioner had been improperly dismissed because section 73 of the Civil Service Law, as applied to petitioner in this instance, was a denial of due process. In effect, it held that the language of section 73 providing that an employee continuously absent more than one year because of a nonservice related disability "may be terminated", meant that before an employee can be dismissed, he must be afforded an opportunity to present evidence on the prognosis of his fitness to return to work. Citing *Matter of Bodnar v New York State Thruway Auth.* (52 AD2d 345, app dsmd 40 NY2d 845), Special Term concluded that the village could not rely solely upon the evidence produced in the arbitration proceeding and that a pretermination hearing was

therefore required. The decision, it was made clear, referred exclusively to petitioner's civil service status and he could, therefore, pursue, in addition, his rights under article XVI of the collective bargaining agreement which governed his right to sick pay.

### THE LAW

Petitioner's position is primarily predicated upon the village's failure to afford him a pretermination hearing which, he maintains, is mandated by the language of section 73 of the Civil Service Law. He therefore mounts an attack upon the constitutionality of the statute as it is applied to the instant facts. That issue is therefore properly before the court in this article 78 proceeding (see *Matter of Overhill Bldg. Co. v Delany,* 28 NY2d 44) and we are not concerned with the constitutionality of the statute as written (see *Matter of Kovarsky v Housing & Dev. Admin. of City of N. Y.,* 31 NY2d 184). We thus address ourselves to the substantive issue raised.

It is axiomatic that due process is not a matter of automatic application and that a hearing is not required "in every conceivable case of government impairment of private interest" *(Cafeteria Workers v McElroy,* 367 US 886, 894). The very nature of due process negates any concept of "inflexible procedures universally applicable to every imaginable situation". A delineation of the requirements of due process therefore must begin with an evaluation of "the precise nature of the government function involved as well as of the private interest that has been affected by governmental action" *(Cafeteria Workers v McElroy, supra,* p 895).

What is the governmental function here involved? At the threshold, let us first reflect briefly upon a memorandum of the State Department of Civil Service which indicates clearly the legislative thinking that spawned the passage of section 73 of the Civil Service Law (NY Legis Ann, 1965, pp 91-92):

"One of the most knotty personnel problems which plague department and agency heads is the problem of what to do about an employee who has been absent and disabled from the performance of his duties for ·a prolonged period of time * * * It is difficult to get temporary replacements and, more often than not, the remaining staff has to absorb an additional work load necessitated by the absence of the disabled employee.

Over a prolonged period this can have a serious, adverse effect on the work of an office or agency. * * *

"Under the provisions of the Civil Service Law, the only means available to free the encumbrance of such a position (unless the absent employee resigns) is to bring charges of incompetency under Section 75 of the Civil Service Law and dismiss the employee on that basis after a hearing. This obviously is not a practical or appropriate solution to the problem. A disciplinary proceeding in most cases prejudices an employee's future or may carry a stigma of incompetency or worse. Appointing officers are, therefore, most reluctant to commence disciplinary proceedings against employees who are ill, especially those who are mentally ill.

"The bill proposes a solution of this dilemma. Under its terms if an employee is continuously absent and disabled for one year, his position may be filled on a permanent basis. Thereafter if he recovers and is physically and mentally fit to resume the duties of his position, the measure will afford him a reasonable opportunity to re-enter the public service. Upon a finding of fitness shown by a medical examination, he will be certified to any existing vacancies in his former department; if none exists, his name will be placed on a preferred list for reinstatement in his former department. A preferred list is certified before any open competitive or promotion list.

"It is believed that the solution proposed by the measure is fair to both department heads and the employees."

■ In that context, what then was the function of the government (the village) as it proceeded pursuant to the provisions of section 73? If it was acting in a judicial or a quasi-judicial role, then concededly the full panoply of due process protection must quickly envelope petitioner prior to termination and a pretermination hearing is mandated (see *Matter of Simpson v Wolansky*, 38 NY2d 391). But is not the issue posed by the statute quite simply this—was petitioner absent from duty for more than one year because of a nonservice connected disability? The sole basis for determination of that inquiry rests in the statute itself and in the absence of any claim by petitioner that he was not in fact incapacitated for that period of time, no judgmental ruling by the village board of trustees was required. It is quite clear that the resolution adopted by the village was purely an administrative determination and was neither a judicial nor quasi-judicial decision. So much for the role of the governmental employer.

Let us now turn to "the private interest that has been affected by governmental action" *(Cafeteria Workers v McElroy,* 367 US 886, 895, *supra).* It is beyond cavil that a tenured governmental employee has a compelling interest in maintaining his position and that he may not be dismissed *under ordinary circumstances* without a due process hearing. We submit, however, that where there exists no question of fact requiring determination, a hearing is indeed an exercise of futility.

Here petitioner has resolutely and repeatedly claimed, at times under oath, his physical incapacity to return to duty. It should be here noted that the permissive language of section 73 of the Civil Service Law is clearly designed to assist only the employer in making sound and valid administrative decisions. Where, as here, emergent circumstances warrant, the employer may replace an employee who has been absent for one year or more because of a nonservice connected disability. By the same token, the option is inferentially given to the employer to keep open the position of an especially qualified or highly specialized employee who cannot be easily and quickly replaced.

As far as the record discloses, petitioner did not possess any special skills or unique abilities, nor did he ever challenge the *bona fides* or the urgency of the village's decision to replace him with an able-bodied police officer. There is nothing in the record that indicates that petitioner, at any time, ever claimed that he was ready to return to duty, yet his rights are amply protected by those provisions of the statute which permit him to apply for reinstatement at any time within a year after his disability ceases. It is only at that point that the prognosis of his physical condition becomes important and relevant. Until then, no reasonable reading of the statute appears to place upon the village the totally unnecessary burden of conducting a *pro forma* inquiry when, we repeat, no factual issue is presented.

Let us now spend a moment seeking to distinguish *Matter of Bodnar v New York State Thruway Auth.* (52 AD2d 345, *supra),* the case relied upon by Special Term. There an employee was stricken with a grand mal seizure in February, 1973, but remained under medical attention for a matter of but a few days. A few weeks later Bodnar strongly protested that he was fit for duty and submitted impressive medical credentials in support of his request to return to work.

The authority, however, denied his request, and, adding insult to injury, advised Bodnar that *as of the following February* "'you will be terminated from your position in accordance with section 73 of the Civil Service Law'" (p 347). By this strategem, the authority thus neatly met the technical time provisions of the statute in that Bodnar had in fact been "absent * * * for one year * * * by reason of a disability", even though that "absence" had been mandated by the authority itself! Small wonder that the authority's action was declared to be both arbitrary and illegal as the court reversed and noted *(Matter of Bodnar v New York State Thruway Auth., 52 AD2d 345, 347, supra):* "An examination of section 73 clearly indicates that while the Authority may terminate the employment status of an employee who has been continuously absent for one year or more by disability, it does not authorize the imposition of an involuntary leave of absence. The obvious intent of section 73 is to provide a method of severance in order to free a job position without prejudicing the employee's future by the institution of disciplinary proceedings under section 75 for incompetency."

The facts at bar are indeed a far cry from those in *Bodnar*, which is hardly authority for the decision at Special Term.

Contra to Special Term we hold that within the context of these facts a hearing, evidentiary or administrative, was not required (see *Cole v Richardson,* 405 US 676). To hold otherwise would do violence to the clearly expressed intention of the Legislature and would utterly frustrate the proper purpose and well-reasoned rationale of the statute.

We emphasize again that these conclusions address themselves exclusively to the statute as it is applied to the facts before us and do not contemplate the constitutionality of the section as it is written.

■ We likewise reject out of hand petitioner's contention that pursuant to article XVI of the collective bargaining agreement, he is entitled (subject only to exceptions not here applicable) to "unlimited sick leave with pay". As stated in *Matter of Cohoes City School Dist. v Cohoes Teachers Assn.* (40 NY2d 774, 778): "We have sought to make it clear, however, that the general rule that any matter in controversy between a board of education and its teachers may be the subject of collective bargaining is limited 'by plain and clear, rather than express, prohibitions in the statute or decisional law' *(Syracuse Teachers Assn. v Board of Educ.,* 35 NY2d 743,

744) as well as in some instances by '[p]ublic policy, whether derived from, and whether explicit or implicit in statute or decisional law, or in neither'."

In *Syracuse Teachers Assn. v Board of Educ.* (42 AD2d 73, 76, affd 35 NY2d 743), the validity of a "sick leave bank" was at issue and although the court upheld the agreement it noted: "There are limits with respect to the credits any teacher may obtain and also to the total extent to which the defendant may be charged."

In *Matter of Board of Educ. v Yonkers Federation of Teachers* (40 NY2d 268, 271) the court discussed the conditions under which a job security clause would be held valid and noted: "A provision in a collective agreement guaranteeing public employees job security *for a reasonable period of time* is not prohibited by any statute or controlling decisional law and is not contrary to public policy." (Emphasis supplied.) The court further stated (p 275): "This is not to say, however, that all job security clauses are valid and enforceable or that they are valid and enforceable under all circumstances. *Notably, the job security clause involved in this case and the staff size clause in the Susquehanna case (supra) were of relatively brief duration, three years and two years, respectively.*" (Emphasis supplied.) The interpretation of article XVI forwarded by petitioner is in direct conflict with the decisional law and public policy as set forth in these cases. Accordingly, we hold that article XVI did not prevent petitioner's dismissal pursuant to section 73 of the Civil Service Law.

HOPKINS, J. P. (dissenting). I dissent and vote to affirm the judgment.

As a tenured public employee the petitioner had a property right in his position. Our Constitution provides that "[a]ppointments * * * in the civil service of the state and all of the civil divisions thereof, including cities and villages, shall be made according to merit and fitness to be ascertained, as far as practicable, by examination which, as far as practicable, shall be competitive" (NY Const, art V, § 6). The petitioner was appointed after passing a competitive examination. Once having been appointed to his position and obtaining tenure (Civil Service Law, §§ 58, 63), the petitioner held a property interest (see *Arnett v Kennedy,* 416 US 134, 151-152; *Perry v Sindermann,* 408 US 593, 601-603).* That property interest

---

* To be distinguished from the petitioner's status as a tenured public employee is

was the right of an individual to enjoy a privilege recognized as essential to the orderly pursuit of happiness by free men *(Meyer v Nebraska,* 262 US 390, 399).

The petitioner's property right could not be removed from him unless the requirements of due process were satisfied. Due process demands some form of a hearing. "This Court consistently has held that some form of hearing is required before an individual is finally deprived of a property interest. *Wolff v. McDonnell,* 418 U.S. 539, 557-558 (1974). See, e.g., *Phillips v. Commissioner,* 283 U.S. 589, 596-597 (1931). See also *Dent v. West Virginia,* 129 U.S. 114, 124-125" *(Mathews v Eldridge,* 424 US 319, 333).

Section 73 of the Civil Service Law, permitting the termination of employment status after a continuous absence from duty for a year or more arising from disability, makes no provision for a hearing and the petitioner was not given a hearing before he was separated from his employment. We must read into the provisions of the statute the requirement of a hearing in order to save it from a declaration of unconstitutionality, if the statute is otherwise constitutional.

In my view the statute is not unconstitutional when the requirement of a hearing is impliedly read into its provisions. A municipality should not be forced to retain indefinitely in its employment one who cannot discharge his duties, and it may well become difficult, if not impossible, to find a qualified substitute to fill the void in the roster. At the same time, however, neither should the disabled employee be deprived of his position without the opportunity of being heard.

In determining the kind and extent of the hearing which due process implies, the Supreme Court of the United States has identified several factors which must be considered—(1) the private interest affected by the official action, (2) the risk of an erroneous deprivation of such interest through the procedure used, and the probable value of different or additional safeguards, and (3) the government's interest and the administrative burden that the procedural requirement would entail *(Mathews v Eldridge,* 424 US 319, 334-335, *supra).* The weight of these factors controls whether an evidentiary or a simple hearing is necessary under the circumstances of the case.

---

the police officer in *Bishop v Wood* (426 US 341), who served at pleasure under the law of North Carolina.

The private interest of the petitioner is substantial. Outside of the liberty of the individual and the provisions and security of his home and shelter, I can think of no interest greater than the right to pursue and enjoy a livelihood. The subsistence of the individual depends largely on the fruits of his labor, and the deprivation of his livelihood strikes at the roots of his dignity and integrity.

The risk of an erroneous decision is less under the circumstances than in the instance of charges leading to disciplinary measures under section 75 of the Civil Service Law. The need to establish the factual foundation for action under section 73 of the Civil Service Law is much less stringent—the absence for the required period due to disability is the factual pattern contemplated by the statute. Thus, an evidentiary hearing would not be necessary. That does not mean that an opportunity for a simple hearing should not be afforded. Even though the municipal board or officer may have the power to terminate the employee's status, the employee may be able to persuade them that such action should not be taken, or should be deferred (see, e.g., *Mathews v Eldridge,* 424 US 319, 348, *supra).*

The interest of the government is, as previously stated, that the services rendered by the employee should continue. However, there is very little lost in time or added in administrative burden to require that notice of the impending action be given to the employee and an opportunity granted to him to state why his separation from public service should not be directed. At the least, the employee should be enabled to present alternative action or other just solutions. Thus, in *Matter of Papasidero v Fasano* (19 NY2d 440, 442) it was said:

"The reason petitioner's proceeding for review of the commissioners' action has been dismissed by the Special Term and the Appellate Division is that petitioner in his petition did not dispute his inability to perform fully all of the duties of a policeman; but alleged that an injury sustained in the course of duty had impaired his physical ability and that he is 'willing and able to perform light police work and duties'.

"Thus, it was concluded by the court that since petitioner does not show that he can perform all the duties of the position which he held, there is no reason for a hearing and his removal by the commissioners without a hearing in violation of the law does not justify judicial relief.

"But the statutory purpose to require a hearing cannot be

given so categorically a negative answer in this case. One function of a hearing is to permit the person affected to present grounds for the consideration of the administrative officer of alternative action and to advise the administrator as to what may be a just solution.

"That the administrator may in the end rule on the merits against the person entitled to the hearing or that he may have good enough ground to do so are not sufficient reasons to preclude a statutory right to tell the administrator that his decision should be the other way."

Hence, the provisions for a simple hearing before action is taken under section 73 of the Civil Service Law should be read into the statute in order to preserve its constitutionality (cf. *People v Lally,* 19 NY2d 27, 35; *People v Kaiser,* 21 NY2d 86, 103; *Matter of Pannell v Jones,* 36 NY2d 339, 342-344; *Matter of Bodnar v New York State Thruway Auth.,* 52 AD2d 345; *Bevan v New York State Teachers' Retirement System,* 74 Misc 2d 443, mod 44 AD2d 163).

We cannot now speculate what a hearing may produce to benefit the petitioner; it is enough that the petitioner must be accorded his day before the village is empowered to act. The judgment should therefore be affirmed.

DAMIANI and RABIN, JJ., concur with O'CONNOR, J.; HOPKINS, J. P., dissents and votes to affirm the judgment, with an opinion, in which TITONE, J., concurs.

Judgment of the Supreme Court, Westchester County entered March 27, 1978, reversed, on the law, with $50 costs and disbursements, and proceeding dismissed on the merits. Cross appeal dismissed as academic, without costs or disbursements.