In the Matter of JORGE W. RIVERA, Appellant, v AUGUSTUS A. BEEKMAN, as Fire Commissioner of the City of New York, et al., Respondents.

First Department, March 30, 1982

APPEARANCES OF COUNSEL

*John G. Lipsett* of counsel (*Boyd, Holbrook & Seward,* attorneys), for appellant.

*Larry A. Sonnenshein* of counsel (*Francis F. Caputo* with him on the brief; *Allen G. Schwartz, Corporation Counsel,* attorney), for respondents.

OPINION OF THE COURT

SULLIVAN, J.

This CPLR article 78 proceeding presents a challenge to a determination by the Fire Commissioner of the City of New York finding petitioner guilty of insubordination to a superior officer.

Petitioner, an acting lieutenant at the time of the incidents which are the subject of this proceeding, joined the fire department in 1963 and has spent the bulk of his career in the community relations bureau, although he has had intermittent service in firefighting units. On December 17, 1979, he was the officer in charge of the West 77th Street quarters of the mobile fire prevention unit, a divi-

sion of the community relations bureau. On that date Captain Joseph Desthers, executive assistant in the fire salvage corps, and whose duties encompassed periodic inspections of the various units of the salvage corps, including the mobile fire prevention unit, visited the West 77th Street quarters. Upon his arrival at 1:49 P.M., Desthers learned that petitioner was not at the quarters and that his unit had been left without an officer. When petitioner returned at 2:27 P.M. Captain Desthers questioned him about his absence. Desthers also inquired as to why no entry had been made in the company journal disclosing petitioner's absence, and as to why the journal contained a blank line between entries. Both omissions were in violation of department regulations.

Petitioner responded that he had been out to lunch, but would not say where he was, or why the journal contained a blank line. Petitioner then clenched his fists and challenged Captain Desthers' authority to ask about his whereabouts, stating that Desthers "was another flunky or lackey sent here by Dozier"[1] and that he was "a liar * * * a damn liar, and in fact * * * no man."

Thereafter, in the presence of Battalion Chief O'Reagen, who had been summoned to investigate the situation, and other department personnel, petitioner admitted his previous comments. He still refused, however, to answer the questions Captain Desthers had previously asked him. Desthers concluded that petitioner was acting irrationally, relieved him of his duties and ordered him to report to the medical division at 9 o'clock the following morning. Petitioner did not appear for the examination but, instead, reported to his duty station at West 77th Street. It is undisputed that Captain Desthers' order relieving petitioner of his duties and directing him to report to the medical division was repeated by Captain Desthers and other superior officers at various times on December 17, 18, 19 and 21, 1979 and ignored. On December 21, 1979, petitioner was suspended without pay for 30 days pursuant to subdivision 3 of section 75 of the Civil Service Law, and, on December 28, the fire department drew an administra-

---

1. Battalion Chief Dozier was the commanding officer of the fire salvage corps.

tive complaint charging petitioner with eight specifications.[2]

In his testimony at the administrative trial petitioner admitted that he had not signed in or out on December 17, and that he permitted a blank line in the company journal. He acknowledged that such conduct constituted a violation of department regulations. He also admitted both his refusal to inform Desthers where he had been and his use of pejorative language, and conceded that an order by a superior officer to report to the medical division need not be in writing. He defended his refusal to report to the medical division because of his belief that the request was unreasonable and involved undergoing a psychiatric examination.

The Administrative Judge found petitioner guilty of four of the charges: one, engaging in conduct tending to bring reproach on the department by his gross disrespect for a superior officer, although he was not found to have menaced Captain Desthers; two, refusal to explain his absence from his post; three, refusal to obey orders relieving him of duty and directing him to report to the medical division; and eight, engaging in a course of conduct which is in violation of his oath of office. Since the four other charges involved petitioner's failure to report to the medical division the Administrative Judge found them to be multiplications and merged into charge three.

The Fire Commissioner thereafter accepted the Administrative Judge's recommended penalty and suspended petitioner for 60 days. A subsequent order issued three months later revoked his acting lieutenant designation and transferred him to the division of fire prevention. Petitioner thereupon instituted this proceeding to annul these determinations. Special Term denied the petition, finding that petitioner had failed "to establish vested interest or tenure in the title of '[A]cting Lieutenant'", and had not sustained his "burden of proof as to capriciousness, malice or discrimination on the part of the [Fire Commissioner]." This appeal ensued.

---

**2.** Petitioner filed a retaliation complaint with the Equal Employment Opportunity Commission on January 3, 1980.

■ At the outset we note, and both parties agree, that Special Term should have transferred the matter to this court, since a substantial evidence question was presented as to specifications one and two, two of the four charges of which petitioner was found guilty. (See *Matter of Dan's Living Room v State of New York Liq. Auth.,* 31 AD2d 799, affd 25 NY2d 759; CPLR 7804, subd [g]; 7803, subd 4.) This court, however, is empowered to dispose of all issues in the proceeding as if the matter had been properly transferred in the first instance. (CPLR 7804, subd [g]; *Matter of Dan's Living Room v State of New York Liq. Auth., supra.)* Thus, our review treats the matter as an original proceeding.

■ An appellate court's scope of review of a determination reached after an administrative hearing is limited to an assessment of whether the administrative finding is supported by substantial evidence. A reviewing court may not re-evaluate the weight accorded the evidence adduced. (*Matter of Pell v Board of Educ.,* 34 NY2d 222, 230; see, also, Cohen and Karger, Powers of the New York Court of Appeals, § 108, p 460.) Nor may it, on the basis of conflicting or contradictory evidence, interfere with such quasi-judicial determination. (*Matter of Sowa v Looney,* 23 NY2d 329; *Matter of Burke v Bromberger,* 300 NY 248; *People ex rel. Guiney v Valentine,* 274 NY 331.) A quasi-judicial determination must be sustained if the reviewing court concludes that others might reasonably reach the same result. (*Matter of Kopec v Buffalo Brake Beam-Acme Steel & Malleable Iron Works,* 304 NY 65, 71.) Based upon these well-established precedents, the determination as to specifications one and two, to which the substantial evidence question is limited, must be confirmed since, as the record discloses, petitioner's guilt on each of the specifications had a basis in substantial evidence.

Petitioner's defense was that the vituperation directed at Captain Desthers was provoked and justified because the captain, as part of a preconceived plot within the fire department to harass him, had made a false entry in the journal regarding his conduct. Petitioner's claim that a prefabricated false entry — never actually entered in the journal — provoked his derogatory comments, was, as the Administrative Judge noted, discredited by the more be-

lievable testimony of another witness. The Administrative Judge, noting an "extremely rehearsed quality" to petitioner's testimony, was unable to find any evidence to support his theory of a conspiracy within the department to "get" him. Thus, petitioner's account of the incident was rejected.

In seeking to overturn the finding of guilt as to specification three, which charged petitioner with repeatedly refusing to comply with Captain Desthers' order relieving him of duty and directing him to report to the medical division, petitioner advances three arguments: the order was arbitrary and capricious, violated his constitutional right to privacy and due process, and violated section 72 of the Civil Service Law.

Contrary to petitioner's claim, the record discloses a legitimate basis for Captain Desthers' order relieving him of duty and directing him to report to the medical division. The captain, whose testimony was found credible, stated that he issued the order after petitioner, acting in an emotional and irrational manner, had failed to recognize his authority as a superior officer and had made disparaging remarks about him including calling him a "damn liar", "no man", a "flunky" and "lackey".

Subdivisions a and g of section 1105 of the New York City Charter give the Fire Commissioner broad power to formulate rules and regulations governing the conduct of the uniform force of the fire department, the members of which are charged with a special duty and obligation to protect the safety of the citizens of this city and their property. The grant of such authority was, no doubt, considered to be essential to the effective maintenance of discipline and the preservation and promotion of the integrity and efficiency of the department and its personnel. One who becomes a member of the New York City Fire Department subjects himself to its rules and regulations.[3] The suggestion that the order of a superior officer can

---

**3.** Regulation 25.1.1 for the uniform force of the fire department states: "Members shall not violate their Oath of Office. They shall obey all laws, regulations, orders, commands, and instructions governing members of the uniformed force. Such obedience shall be prompt, implicit and unqualified."

simply be disobeyed whenever a subordinate concludes that it is unreasonable is manifestly untenable. The organizational structure of the fire department, a quasi-military organization, would be irreparably harmed and its orderly operation substantially impaired if such conduct were countenanced.

A more troublesome aspect of the case is petitioner's claim that his refusal to obey the order to report to the medical division was justified since the examination contemplated was to be of a psychiatric nature. In such circumstances, petitioner argues, due process requires that he be furnished with a written statement of the reasons for the order directing the examination and an opportunity to respond since property and privacy rights are involved.

The Fire Commissioner argues that petitioner was prosecuted, not for refusing to undergo a psychiatric examination, but for disobeying an order to report to the medical division. But the fact is that when petitioner failed to report to the medical division on December 18, as ordered, the division dispatched one of its medical officers, Dr. Robinson, to the West 77th Street quarters to examine petitioner for his irrational behavior. Dr. Robinson testified that when he arrived at the quarters he was informed by Captain Desthers that petitioner had acted irrationally and that on the basis of this information he intended to commence his examination with a psychiatric interview. Notwithstanding petitioner's refusal to submit to any examination except by an impartial psychiatrist of his own choosing, Dr. Robinson found petitioner coherent, well oriented and rational. As a result of this incident petitioner's permanent departmental medical card was marked: "12/18/79 VQ SLG [visited quarters sick leave granted] by Dr. Robinson for irrational NSC [not service connected] FD [fit for duty] 12/22/79".

Thus, petitioner argues that the nature of the directive triggered an obligation to adhere to minimal due process safeguards "[f]or '[w]here a person's good name, reputation, honor, or integrity is at stake because of what the

---

Section 1 of article 22 of the contract between the Uniform Firefighters Association, which represents petitioner, and the City of New York provides: "*A direct order by a Superior Officer under all circumstances must be carried out* and objections raised at a later date through the formal grievance procedure." (Emphasis added.)

government is doing to him notice and an opportunity to be heard are essential.'" (*Board of Regents v Roth,* 408 US 564, 573, citing *Wisconsin v Constantineau,* 400 US 433, 437.) In *Stewart v Pearce* (484 F2d 1031, 1032, 1034), upon which petitioner relies, a college instructor who had been involved in a demonstration "particularly disparaging [to] the College administration" was ordered, by letter, to undergo a psychiatric examination to determine his mental competency to perform his duties. In holding that he was entitled to a statement of reasons, notice of a hearing and a proper hearing, the court stated: "A hearing is required when any charge is made that 'might seriously damage [a person's] standing and associations in his community'" (p 1034, citing *Board of Regents v Roth, supra*).

We note, however, several factual dissimilarities between *Stewart* and the instant case. Dr. Robinson was not a psychiatrist, but a surgeon, whose function was to conduct a physical examination to determine the existence of any medical reason for petitioner's irrational conduct. His psychiatric interview was to be limited to orientation and attitude. Thus, we are not dealing here with a directive that petitioner undergo a psychiatric examination in the formal sense. In fact, Captain Desthers testified that he never ordered a psychiatric examination because such a directive would have necessarily involved a medical judgment, which he was not qualified to make. Given petitioner's apparent highly charged emotional state, however, Captain Desthers understandably had reason to relieve him of his duties and to order a medical examination.

The inability of a member of the uniform force to perform his job assignment is a matter of legitimate concern to the fire department. In weighing the personal rights of such an individual against the department's obligation to provide a vital public service in an area fraught with physical risk, it is clear that the minimal intrusion involved here did not infringe upon petitioner's right to privacy.

Moreover, the examination was not ordered for the purpose of instituting termination proceedings because of a nonphysical disability, but simply to ascertain if petitioner was physically capable of performing his duties, which entailed considerable responsibility and the supervision of

other firemen. Thus, while petitioner concededly "has a property right in continued civil service employment" (*Snead v Department of Social Servs. of City of N. Y.,* 355 F Supp 764, 771), this right was not placed in jeopardy by the directive to report to the medical division. For the same reason, we reject his claim that the directive to report to the medical division violated section 72 of the Civil Service Law, which requires that any mental examination of a civil servant be conducted by a medical officer selected by the city personnel director. Section 72 governs the procedures used to determine whether to place an employee on disability because of mental, as opposed to physical, infirmity. (See *Matter of Bodnar v New York State Thruway Auth.,* 52 AD2d 345, 348.) But it does not mandate a procedure to be followed whenever a public employee is directed by his superior to take a medical examination. No doubt, had Dr. Robinson discerned a mental problem, this section's procedures would have been invoked.

Petitioner has also challenged, as arbitrary and capricious and in violation of his constitutional right to due process, the commissioner's determination revoking his designation as an acting lieutenant and reassigning him to other duties. While petitioner's redesignation and reassignment occurred approximately three months after the commissioner's determination following the disciplinary hearing, the fact is that the mobile fire prevention unit, to which he was assigned, was deactivated and disbanded due to budgetary shortages. Petitioner was assigned to field work to meet the manpower needs of the fire department. Since he was no longer performing administrative functions, the temporary officer designation of acting lieutenant was revoked. Other officers in the disbanded mobile fire prevention unit were also reassigned to other duties and their temporary officer designations revoked.

Nevertheless, petitioner argues that the commissioner's order was arbitrary and capricious since he had seniority over other acting lieutenants with whom he served while assigned to the community relations bureau, and that, furthermore, these acting designations have been made permanent. An "Acting" designation, by its very nature, cannot confer seniority since, "[t]he term 'Acting' when

used in conjunction with the title of a rank of the uniformed force shall mean that the member so designated is *temporarily* assigned to perform the duties of a higher rank." (Fire Department Regulations, ch 1, Definitions; emphasis added.)

■ Petitioner's view that his temporary appointment conferred permanent seniority rights is contrary not only to the department's own regulations, but also to New York law, which provides for competitive testing to attain permanent civil service status with seniority rights. (See Civil Service Law, §§ 50, 61, 64, 80.) The argument that a temporary appointment can ripen into a permanent appointment with tenured seniority rights has been uniformly rejected. (*Matter of Hilsenrad v Miller,* 284 NY 445, 451; *Koso v Greene,* 260 NY 491, 494-495; *Matter of Roberts v Parker,* 52 AD2d 651.)

In *Koso v Greene* (*supra,* p 495) the Court of Appeals discussed the value of temporary appointments: "These appointments are mere stop-gaps, exceptions of necessity to the general rules with respect to the filling of such positions, and in no sense probationary. While such appointments may on occasion be succeeded by a permanent appointment, this may only be by virtue of examination and eligibility under the civil service laws, and not by reason of any ripening of the temporary or provisional appointment into a permanent appointment."

Thus, it is well settled that, absent some statute, rule or contract, a nontenured public employee does not possess a property right as a temporary appointee to continued employment and tenure in the title to which he is temporarily appointed. (*Board of Regents v Roth,* 408 US 564, 578, *supra; Codd v Velger,* 429 US 624, 628; see *Sirohi v Merges,* 58 AD2d 645.) While petitioner may have possessed what has been described as "an abstract concern" in retaining his temporary appointment, he never had a property interest sufficient to fall within the protection of due process. (*Board of Regents v Roth, supra,* p 578.)

Finally, petitioner's argument, that because of the stipulation into which he entered with the fire department authorizing his temporary appointment his appointment

would be permanent and could not be revoked without providing him with a hearing, is belied by the stipulation itself, which contains no such promise. Moreover, even if such an agreement were made, it would be of doubtful validity.

We have examined petitioner's other points and find them without merit.

Accordingly, the order and judgment (one paper), Supreme Court, New York County (SHORTER, J.), entered December 12, 1980, should be vacated, on the law, without costs or disbursements, respondent's determination entered May 22, 1980, finding petitioner guilty of four charges and suspending him from duty as an acting lieutenant without pay for a period of 60 days, in addition to a previous 30-day suspension, confirmed, respondent's determination entered August 27, 1980, demoting petitioner from acting lieutenant to fireman 1st grade, and transferring him from the community relations bureau to the division of fire prevention, confirmed, and the petition dismissed.

SANDLER, J. P., CARRO, MARKEWICH and BLOOM, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered on December 12, 1980, unanimously vacated, on the law, without costs and without disbursements, respondent Fire Commissioner's determination entered on May 22, 1980, finding petitioner guilty of four charges and suspending him from duty as an acting lieutenant without pay for a period of 60 days, in addition to a previous 30-day suspension, confirmed, respondent's determination entered August 27, 1980, demoting petitioner from acting lieutenant to fireman 1st grade, and transferring him from the community relations bureau to the division of fire prevention, confirmed, and the petition dismissed.