■ In the Matter of Henry King et al., Appellants, v Jacqueline McMickens, as Commissioner of Correction of the City of New York, et al., Respondents.—Judgment, Supreme Court, New York County (Bruce McM. Wright, J.), entered January 16, 1985, denying petitioners' application for vacatur of a determination of respondent Commissioner of Correction and the City of New York and dismissing the petition, unanimously reversed, on the law, the proceeding is treated as one transferred to this court for determination, and upon such transfer and review the determination of the Commissioner is confirmed, the petition is denied and the proceeding dismissed, without costs.

The determination of the Commissioner, dated May 3, 1984, found each of the petitioners guilty of a departmental charge and specification after a hearing and dismissed them from their positions as correction officers. They thereupon instituted this CPLR article 78 proceeding. Special Term entertained the petition and granted judgment dismissing the petition instead of transferring the matter to this court. Since a question of substantiality of evidence was involved, the matter should have been transferred to this court in the first instance (CPLR 7803 [4]; 7804 [g]). However, this court is empowered to treat the substantial evidence question de novo and decide all issues as if the matter had been properly transferred (see, Matter of Cohen v McGuire, 94 AD2d 664; Matter of Rivera v Beekman, 86 AD2d 1, 5).

Petitioner Henry King became a correction officer with the Department of Correction on May 1, 1972. Petitioner Melvin King became a correction officer on January 21, 1974. On August 10, 1983 the Inspector General's office of the Correction Department received a report from the Office of Special Prosecutor that a confidential informant had alleged that petitioners were involved in illegal drug activities. During the course of the investigation the correction officer investigator assigned to investigate the allegations notified petitioners that the Inspector General had ordered each of them to submit to urinalysis. They were also personally directed to do so by Captain Simmons of the Correction Department. They refused to comply with the order, and both were suspended for this refusal. Each was thereafter served with the charges and specifications, which read as follows:

"Said officer on December 19, 1983 was ordered by the Inspector General Tyrone T. Butler, to report to MMU [Medical Management Unit] for a urinalysis. This order was con-

veyed through investigators Luis Velez #28 and Richard Pagan #29. Said officer refused to comply.

"Rule: 3.15.090
3.15.030"

Upon petitioners' plea of not guilty, a departmental disciplinary trial was conducted before an Administrative Law Judge. The evidence before the Administrative Law Judge indicated that the investigator had contacted a confidential informant who advised him that petitioners had frequented a certain drug-trafficking location and that they used illegal drugs at such location. Further investigation revealed that the location was known to the police department as premises used for drug trafficking. Thereafter, the investigator received information from the informant that petitioners had recently been observed using drugs at the location.

The investigator transmitted the information to his superiors, who directed the investigator to escort the petitioners to the Medical Management Unit at Rikers Island and order them to provide urine specimens for analyses. The investigator informed petitioners of such instructions, and informed Captain Simmons at the Medical Management Unit of such directions. After first asserting they were unable to urinate, and thereafter conferring with a union attorney, petitioners told the investigator and Captain Simmons that they refused to provide urine samples. Petitioners offered no evidence to the contrary.

Petitioners asserted that the instructions to provide the samples were unconstitutional in that they were not based upon reasonable grounds and not issued by an appropriate officer.

The hearing officer found petitioners guilty, as follows:

"Respondents were on duty when the order was conveyed and refused to comply with the order without justification
* * *

"Respondents' insubordinate refusal to obey the order constituted a violation of the Department's legitimate authority and precluded it from carrying out its obligation to assure the integrity and fitness of members".

The hearing officer recommended dismissal from the Department, and the Commissioner approved the findings and recommendations.

It is plain that the single issue was the refusal of petitioners to obey the orders of the Inspector General and Captain

Simmons directing petitioners to submit to a urine test. The Commissioner's determination was supported by substantial evidence, "such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact" *(300 Gramatan Ave. Assoc. v State Div. of Human Rights,* 45 NY2d 176, 180). An administrative determination supported by such evidence has a rational basis entitling it to be upheld by the courts *(Matter of Pell v Board of Educ.,* 34 NY2d 222).

Petitioners' complaint that much of the testimony before the hearing officer was hearsay is of no avail. Administrative tribunals are not bound by strict rules of evidence *(Matter of Sowa v Looney,* 23 NY2d 329; *300 Gramatan Ave. Assoc. v State Div. of Human Rights, supra; Matter of Eagle v Paterson,* 57 NY2d 831). The information furnished by the informant provided the basis for a reasonable suspicion that petitioners were engaged in activity inappropriate to their office.

There was substantial evidence and a rational basis for the determination. Petitioners plainly refused to obey the lawful orders of the Inspector General and Captain Simmons violating Department of Correction rules 3.15.030 and 3.15.090.

Petitioners were not deprived of 4th Amendment constitutional rights, as they assert. The correction officer occupies a sensitive position and is subject to paramilitary discipline. He cannot perform his demanding duties if impaired by drugs. His reasonable expectation of privacy as a private citizen must yield to compelling governmental interests when he becomes an officer. *(See, Matter of Krolick v Lowery,* 32 AD2d 317, *affd* 26 NY2d 723, *cert denied* 397 US 1075, holding that firefighters could be required to submit to blood tests for alcohol; *Division 241 Amalgamated Tr. Union v Suscy,* 538 F2d 1264, *cert denied* 429 US 1029, holding that blood and urine tests for bus and train operators were not an impermissible intrusion, given the public interest in insuring that such operators are fit to perform their jobs; *see also, Kelley v Johnson,* 425 US 238.)

Probable cause is not required where the search is not aimed at the discovery of evidence for use in a criminal trial *(Camara v Municipal Ct.,* 387 US 523). Reasonable suspicion is sufficient *(Security & Law Enforcement Employees v Carey,* 737 F2d 187; *cf. Schmerber v California,* 384 US 757).

Petitioners were properly ordered to submit urine samples. Dismissal was not an excessive penalty, nor was it shocking to one's sense of fairness or disproportionate to the offense *(Pell v Board of Educ., supra).* Concur—Kupferman, J. P., Sullivan, Ross, Carro and Fein, JJ.