■ CHARLES JOHNSON, Respondent, v BENJAMIN WARD, as Commissioner of the New York City Department of Correction, Appellant.

Petitioner was dismissed from his position as an officer with the New York City Department of Correction following a hearing at which evidence was adduced establishing that he stabbed a prisoner named Gonzales under his supervision in violation of Department rule 7.05.060, prohibiting the use of excessive and unnecessary force against an inmate. Noting mitigating factors, namely the nearly two-year delay in prosecuting the charges and petitioner's uneventful service since the incident, the Administrative Law Judge recommended that petitioner's penalty consist of a 60-day suspension without pay. Respondent, then Correction Commissioner Ward, while adopting the administrative findings as to guilt, declined to impose the recommended penalty. Noting the seriousness of petitioner's misconduct, respondent observed "There is no place in the Department for an officer who manifests anger or

attempts to impose discipline with the blade of a knife". Petitioner was accordingly dismissed from the Department of Correction. Thereafter, petitioner sought the annulment of respondent's determination by commencing the within CPLR article 78 proceeding.

As is clear from the instant petition and the notice thereof, one of the grounds upon which annulment is sought is that respondent's determination is not supported by substantial evidence. Indeed, in his sixth cause of action petitioner alleges: "The determination of the respondent Ward should be annulled on the ground that it is not supported by substantial evidence."

Where an article 78 petition raises an issue respecting whether an administrative hearing determination is supported by substantial evidence, the court in which the action is commenced must transfer the proceeding to the Appellate Division (CPLR 7804 [g]; *Matter of King v McMickens,* 120 AD2d 351 [1st Dept 1986]). The mandate of CPLR 7804 (g) notwithstanding, Special Term entertained the within petition. In doing so, Special Term ventured that transfer to the Appellate Division "is not required where insubstantial evidence appears on the record to justify the Commissioner's conclusion of outright termination". Thereupon, Special Term embarked upon an · extensive review of the evidence and concluded, in direct contradiction to the Administrative Law Judge's finding, that the stabbing at issue was accidental. Mere negligence, opined the court, did not warrant the extreme penalty of dismissal. Respondent's determination was, therefore, annulled and petitioner's penalty fixed in accordance with the Administrative Law Judge's recommendation.

It was plainly erroneous for Special Term to have entertained this proceeding and its determination must be vacated. Lack of substantial evidence having been raised by petitioner as a ground for annulling the administrative determination, Special Term was bound to transfer the proceeding to this court (CPLR 7804 [g]; *Matter of King v McMickens, supra).* It had no authority to find that the evidence was insubstantial, and compounded its error by venturing that the evidentiary insubstantiality rendered its review of the matter proper.

We review the matter de novo and consider the issues raised as if they had been properly transferred *(Matter of King v McMickens, supra; see also, Matter of Cohen v McGuire,* 94 AD2d 664; *Matter of Rivera v Beekman,* 86 AD2d 1).

Although the within petition clearly challenges the Admin-

istrative Law Judge's finding as to guilt and seeks annulment of the entire administrative determination, not just amelioration of the penalty imposed by the Commissioner, petitioner now maintains, in an apparent attempt to prevent vacatur of Special Term's disposition (see, Matter of O'Shea v Martin, 34 Misc 2d 987), that he challenges only the severity of the penalty. Assuming petitioner's challenge is so limited, petitioner admits the validity of the Administrative Law Judge's third factual finding which reads: "3. At about 12:30 P.M. on October 26, 1980 Officer Johnson was assigned to meal relief in the south mess hall. He directed inmate Miguel Gonzales to clean up food near his food tray. Gonzales refused to do so, but upon being so directed by a Captain, Gonzales cleaned the area. When Gonzales was attempting to leave the mess hall area Johnson pulled out his knife and grabbed Gonzales with one hand on Gonzales' shoulder, and the other hand, with the knife, on Gonzales' buttocks. *In that manner, Officer Johnson stabbed Gonzales in the left buttock.* Such action was excessive and unnecessary and brought discredit upon the Department" (emphasis added).

Acceptance of this finding is fatal to petitioner's case. We think it evident that the Administrative Law Judge in adopting this finding did so while expressly rejecting petitioner's claim of inadvertence.* A finding that a correction officer has intentionally stabbed an inmate in his charge compels a serious penalty. This is especially true where, as here, the resort to potentially deadly force is triggered not by violent or illegal conduct, but by a relatively trivial and short-lived failure by the inmate to follow instructions. As it was, Mr. Gonzales received a deep wound for which sutures were recommended; the injury might, however, have been far worse had petitioner's knife blade happened, as it very well could have, upon a more vital area of Gonzales' anatomy. A correction officer's demonstrated capacity for the sort of willful and

---

* The Administrative Law Judge observed in pertinent part:

"Johnson admitted that he had his knife out and open, stating that he was using it to sharpen a pencil. Thus, he claims any cutting of Gonzales was accidental. It is not believable that he would just decide to sharpen a pencil with a knife after the Captain told Gonzales to clean up the food. There was no need for Johnson to have a sharp pencil at that time. It is much more likely that Johnson extracted the knife just prior to cutting Gonzales. And that also conforms to statements by both Gonzales and Lound that no knife was seen prior to their observation of the wound.

"Finding respondent Officer Johnson's version of the events to be incredible it is necessary to determine if Johnson's conduct violated Directive 5002."

violent misconduct here addressed presents a grave risk to inmates and brings disrepute upon the Department of Correction. Under the circumstances, the Commissioner was left with little option but to impose the severe sanction of dismissal.

While we think it clear that the Administrative Law Judge did find the subject stabbing to be intentional, it would avail petitioner little if his claims of negligence and accident were credited. Negligence of the order here concerned presents a risk of unacceptable magnitude. For a correction officer to initiate coercive physical contact with a prisoner while inadvertently or unpurposefully wielding a knife demonstrates either an uncommonly dangerous lapse in awareness or a grave failure of judgment. The risks posed by such profound negligence are no more acceptable than those posed by intentional misbehavior, even if the conduct may be less offensive from a moral perspective. Thus, even if the present incident could be characterized as accidental, which it cannot, we would be unable to hold that respondent Commissioner's action in dismissing petitioner was inappropriate, much less shockingly disproportionate to the cited misconduct.

Were it not for the peculiar posture that petitioner has assumed in an attempt to preserve Special Term's decision, it is to be expected that petitioner would more frankly acknowledge the nature of the claim at issue. In essence, it seems that petitioner is really urging that respondent's determination is not supported by substantial evidence. Toward this end, it is asserted that Gonzales' testimony was riddled with inconsistencies and that it is petitioner's version of events, portraying an innocent accident, that should be adopted. We decline to duplicate Special Term's error by substituting our findings for those so carefully made by the Administrative Law Judge. (See, 300 Gramatan Ave. Assoc. v State Div. of Human Rights, 45 NY2d 176, 179-182; Matter of Pell v Board of Educ., 34 NY2d 222.) Gonzales' testimony was corroborated in all material respects by the testimony of another prisoner, Horace Lound, who witnessed the incident; by the notations on the "Injury to Inmate Report" of the nurse who administered to Gonzales just after the incident; by the thorough internal investigative report filed in the days following the incident; and by petitioner's own damaging admissions. Any inconsistencies in Gonzales' account were adequately explained as products of official intimidation and overreaching. In this regard, we note that petitioner's superior, Captain Ballew, has admitted to and been penalized for falsifying critically impor-

tant reports of the events in question. We are cognizant, as was the Administrative Law Judge, that the inmates who testified had criminal records, but along with the Administrative Law Judge we can find no motive for their fabrication of testimony. By contrast, as the Administrative Law Judge observed, petitioner's motive to fabricate in an attempt to preserve his position was clear and his testimony was incredible both for its content and for the hostile and arrogant manner with which it was given.

Finding, as we do, that there is substantial evidence in the record to support the administrative determination of guilt, we cannot but conclude that petitioner's dismissal was an appropriate sanction and, as such, does not shock our sense of fairness *(Matter of Pell v Board of Educ., supra,* at pp 234-235). As previously stated, the deliberate or even merely negligent stabbing of an inmate by a correction officer in circumstances such as those here obtaining warrants imposition of the severest penalty. The safety of inmates and the integrity of the Department of Correction would otherwise be unacceptably compromised. This is true despite the regrettable delay in prosecuting the charges and petitioner's uneventful performance since the incident, which factors were cited by the Hearing Judge in mitigation. The gravity of the conduct involved in this case simply does not permit amelioration on these grounds. *(Supra.)* Concur—Murphy, P. J., Kupferman, Milonas, Rosenberger and Ellerin, JJ.

