■ In the Matter of CLIFFORD STABNER, Petitioner, v NEW YORK CITY HOUSING AUTHORITY et al., Respondents.—Petition brought pursuant to CPLR article 78 (transferred to this court by order of Sup Ct, NY County [Nardelli, J.], entered Apr. 19, 1989) to review a determination of the New York City Housing Authority, dated March 23, 1988, which confirmed the report and recommendation of the Trial Officer finding petitioner guilty of certain departmental charges and dismissed him from his position as a New York City Housing Police officer, is unanimously granted in part to annul the finding of guilt of charge 1 (g), and to vacate and annul the penalty of dismissal and to remand the matter to the respondent for the imposition of a new penalty, and is otherwise confirmed, without costs.

Petitioner Clifford Stabner seeks review of his termination, after over five years of service, from his position as a New York City Housing Police officer based on charges arising out of an incident that occurred on the morning of June 4, 1987. At the hearing on the charges it emerged that, between 7:30 and 8:00 A.M. on that date, petitioner, who was due to go on duty at 9:45, was observed at the department training facility in the company of a woman. Shortly after, a fellow officer encountered petitioner, who asked him to tell the sergeant that he wanted the day off and gave him his off-duty revolver for safekeeping. According to that officer, petitioner, though disheveled, did not appear to be intoxicated. When petitioner did not appear at roll call his sergeant went to look for him and, though he did not find him, discovered that the window of petitioner's car had a hole in it which he thought might have been caused by a bullet. At that point, a search was initiated and, at around noon, petitioner was found asleep in a storeroom. The officers who reported on his condition were in conflict as to whether he appeared intoxicated, though none of them detected a smell of alcohol. They agreed that he looked tired and bleary-eyed and was unfit for duty.

Petitioner was immediately taken for questioning before a number of senior officers. However, while other officers were being questioned, he became ill and went to the bathroom, where he remained for two hours, vomiting and crying. Petitioner was clearly extremely emotionally upset and, in apparent frustration, he punched the wall or a towel rack and injured his hand. He was taken to the hospital, where it was determined that, although his hand was not seriously injured, he was suffering from a severe alcoholic reaction.

At the hospital petitioner was informed that he had been ordered to submit to a drug test. At first he agreed, but he then refused. One witness testified that he refused the test after speaking with his union representative and another testified that he refused it only after he was told that he was being suspended from duty regardless of the results of the test. After petitioner was released at 9:30 P.M., he was ordered back to his area for questioning. It was not until after midnight that he was interviewed, and, at that point, on advice of counsel, he refused to answer any questions. According to petitioner, he had no recollection of the events of the previous evening.

Petitioner testified that since the incident he had come to terms with the fact that he was an alcoholic and admitted that he had frequently indulged in drinking binges and suf-

fered from blackouts. He also admitted that he had been drunk on the night before the incident in question and that he remembered nothing after leaving a bar a few hours after work until he woke up in the storeroom the next day. Although he acknowledged his alcoholism, petitioner denied that he ever drank while on duty or that he ever used illegal drugs. This testimony was supported by overwhelming evidence showing that petitioner was an exemplary officer, had received numerous commendations, medals, and awards for valor and, other than the one instance charged herein, had an excellent record. Indeed, the officers who testified at his hearing who knew petitioner personally spoke of him with high praise.

It also emerged at the hearing that, on the morning following the incident herein, petitioner had admitted himself to an alcohol detoxification program at Freeport Hospital, where he immediately requested a drug test. That test was negative. After his release, he entered a rehabilitation program for 21 days and had since participated in Alcoholics Anonymous on a daily basis.

Petitioner was adjudged guilty of the charges that he was absent from duty without approval, was intoxicated to the extent of being unfit for duty, improperly permitted a civilian female to enter the training facility, refused to comply with a lawful order to submit to a drug test, intentionally impeded an investigation by causing injury to his hand and refused to answer questions in the investigation. He was adjudged not guilty of several other charges, and was cleared of any implication that he had caused the hole in his car window by firing his gun. In spite of the Hearing Officer's recommendation that he be suspended for 44 days, the Housing Authority subsequently chose to terminate his services.

"Judicial review of administrative determinations * * * is limited to consideration of whether that resolution is supported by substantial evidence". *(Matter of Silberfarb v Board of Coop. Educ. Servs.,* 60 NY2d 979, 981.) Under this standard, the evidence herein was sufficient to sustain all of the charges brought against petitioner with one exception. Contrary to petitioner's argument, there was sufficient evidence to show that he refused to comply with a lawful order to submit to a drug test. Petitioner's captain testified that, at the time that test was ordered, he was unaware of petitioner's history of alcohol abuse and had been informed not only of petitioner's bizarre behavior but that he did not smell of alcohol. Thus, there is substantial evidence that, given the information

available to him at that time, the order was based on reasonable suspicion and was therefore lawful. However, with respect to charge 1 (g), i.e., that petitioner intentionally impeded the investigation by causing injury to his hand, there was absolutely no evidence from which an inference could be drawn that petitioner injured his hand in an intentional attempt to impede the investigation, rather than in a gesture of frustration and anger with himself.

Since we have found that charge 1 (g) is unsupported by any evidence, the finding of guilt on that charge must be annulled, the penalty vacated and the matter remanded to the respondent Housing Authority for imposition of a new penalty. In so doing we note that this case presents troubling concerns since petitioner was terminated on the basis of this single incident after five years of exemplary service during which he received innumerable commendations and awards.

The Housing Authority's rationale for overriding the recommendation of a 44-day suspension and instead terminating petitioner was that petitioner's refusal to submit to a drug test warranted this action because of the Authority's "obligation to take all steps to have a drug-free Police Department." However, we question whether this commendable goal would in any way be served by petitioner's termination.

The evidence which emerged at the hearing showed that there is no basis to believe that petitioner had ever abused illegal drugs. It showed that, while he had a long-term history of alcohol abuse, he had never been known to use illegal drugs and that he was drunk on the night before the incident, accounting for his behavior. Of course, this information was not available to petitioner's captain when he determined that there was reasonable suspicion to order the drug test and petitioner was therefore obligated to comply with that order. However, the record reveals that there is no basis to believe that petitioner had ever actually used illegal drugs (cf., Matter of King v McMickens, 120 AD2d 351, affd 69 NY2d 840) and that his refusal to take the drug test was made when his judgment was still impaired by the effects of his binge and he was still at the hospital being treated for severe alcohol abuse. Indeed, he initially agreed to take the test. His subsequent refusal was apparently influenced by his anger about the fact that he was going to be suspended regardless of the outcome of the test and may also have been the result of advice from his union representative. Indeed, upon his voluntary admission to a detoxification program the next morning, when he was recovered from the acute effects of his drinking, he

immediately requested that he be given a drug test, realizing that his prior refusal to do so had been an error in judgment. That test, although apparently administered too late to be completely conclusive, did not show evidence of any illegal drugs.

The evidence at the hearing demonstrated without contradiction that the misconduct here was directly traceable to petitioner's alcoholism, a condition which he has confronted and for which he is undergoing treatment. The documented departmental policy regarding officers with alcohol-related problems is to support and encourage rehabilitation with the goals of recovery and restoration to full duty (cf., Kroboth v Sexton, 160 AD2d 126 [1st Dept 1990]).

While we are cognizant of the need for strict disciplinary standards in a police organization, such as respondent, a quasi-military organization (see, Matter of Bal v Murphy, 55 AD2d 26, affd 43 NY2d 762), we are also aware of the levels of punishment that have been imposed by a parallel agency, New York City Police Department, in various situations. Police officers found to have committed outrageous unprovoked assaults on civilians were punished by suspensions for only 30 days (Matter of Flowers v Ward, 138 AD2d 242; Matter of Maxwell v Ward, 145 AD2d 303); officers found guilty of following a civilian motorist, bumping into his car, ultimately beating him up and then lying about the incident were punished by suspensions of 20 or 30 days (Matter of Ferriso v Ward, 161 AD2d 289); and an officer whose failure to safeguard information about the Department's Organized Crime Division resulted in it falling into the hands of a reputed organized crime figure, thereby jeopardizing fellow officers, was punished with a 30-day suspension (Matter of Tuzzio v Ward, 160 AD2d 583). While we have noted our chagrin at such leniency under the circumstances detailed, it is somewhat puzzling and disturbing to note that petitioner, whose position as a Housing Police officer subjected him to similar disciplinary standards, was to be terminated because of one incident, involving injury to no other person, which was clearly the direct result of his alcoholism, a disease for which he has sought treatment, in spite of the fact that he has shown every indication of the likelihood of a successful rehabilitation and continued service as an extremely valuable member of his force. Concur—Sullivan, J. P., Carro, Ellerin and Rubin, JJ.

Rosenberger, J., concurs in the result only.