JOSEPH KROBOTH, Appellant, v BRENDAN SEXTON, as Commissioner of the Department of Sanitation of the City of New York, Respondent.

First Department, August 9, 1990

**APPEARANCES OF COUNSEL**

*Robert J. Lashaw* for appellant.
*Julian L. Kalkstein* of counsel *(Larry A. Sonnenshein* with

him on the brief; *Victor A. Kovner, Corporation Counsel,* attorney), for respondent.

### OPINION OF THE COURT

CARRO, J.

The broad discretion enjoyed by those who are empowered to discharge probationary employees is not unbridled, but is, as a matter of law and public policy, contingent upon good faith.

The essential facts in this case are not complex. Petitioner, Joseph Kroboth, was appointed as a probationary sanitation worker on July 18, 1988 by the Department of Sanitation (the Department) of which respondent Brendan Sexton was Commissioner. Petitioner had a one-year probation, which was to have elapsed on July 17, 1989.

On November 26, 1988, petitioner called his department 30 minutes before his shift was to begin, requesting emergency leave. It is undisputed that petitioner was aware that under the Department Code of Conduct § 1.5, he was required to call "at least one hour before [his] assigned tour of duty." In any event, petitioner was immediately advised that he would be listed as "AWOL" unless he submitted proof of his emergency need. When petitioner failed to do this, he was issued an "Official Letter of Warning", which stated that "any further absences of this nature will result in disciplinary action."

On December 30, 1988, petitioner neither appeared for work nor called his absence in to his department. However, on that very day, he contacted the Department's Emergency Assistance Unit (EAU), seeking aid in his battle against alcoholism. The *raison d'etre* of the EAU is to provide confidential assistance to Department employees, including probationary employees, in need of help with a broad range of personal and substance abuse problems. Indeed, the record contains an informational letter signed by respondent, to Department employees, which briefly describes the EAU program, and further states, "this program is designed to assist you and your family on a *confidential* [emphasis in original], professional and humane basis *without jeopardizing your job, future or reputation*" (emphasis added).

In his brief, respondent comments, with regard to the December 30, 1988 absence, that "appellant was well enough to contact the Department's Emergency Assistance Unit."

However, a letter from Martin Chestnut, Assistant Director of the EAU, to respondent's Deputy Commissioner resoundingly rebuts the implication that petitioner was acting in an irresponsible and cavalier way that day, stating that the EAU "would have requested that [petitioner's] status for the day be sick in preparation for hospitalization."

Petitioner was advised by the EAU that because it would be closed for the New Year's Day holiday, he was to come to the EAU on January 3, 1989, which was the next workday. Petitioner complied with these instructions, and, on January 3, 1989, following his visit to the EAU, he voluntarily admitted himself to Booth Memorial Hospital for alcohol detoxification. He remained in the hospital until January 10, 1989 and according to Assistant Director Chestnut, "participated fully in aftercare treatment."

On January 12, 1989, the Department filed a written complaint against petitioner, the grounds of which was the December 30 absence, which was classified as an AWOL. On January 20, 1989, Assistant Borough Superintendent James Ardizone recommended that "based on [petitioner's] 5 instances of sick and two AWOLS and my interview" petitioner should be terminated. It is undisputed that the five sick days were for illness unrelated to the alcoholism.

A divided evaluation review board (Board), composed of senior Department managers, supported the recommendation, based upon the two subject AWOLs. Christopher Beemer, the Deputy Commissioner of Administration, and respondent approved the Board's recommendations on February 16, 1989. Petitioner was terminated shortly thereafter, on February 21, 1989.

It is noteworthy that from January 10, 1989, when petitioner was released from the hospital, until February 21, 1989, when the Department terminated his employment, petitioner performed all duties satisfactorily, and did not violate any of the Department's rules or regulations. During the same time period, petitioner continued to participate in the EAU aftercare program. It also merits mention that only one day after petitioner was terminated, Martin Chestnut, in his capacity as Assistant Director of the EAU, sent Deputy Commissioner Beemer a lengthy letter on behalf of petitioner, forcefully arguing that he should not have been terminated.

Beemer also received a letter from petitioner, dated March 1, 1989, requesting that he be reinstated. On March 16, 1989,

the Board met to consider petitioner's request in conjunction with Chestnut's letter. Again by a split decision, the Board, adhering to its determination regarding the two AWOLs, declined to recommend reinstatement.

Beemer, who was in agreement with the Board, informed petitioner by a letter dated March 27, 1989 that he would not be reinstated. In pertinent part, the letter stated:

"As you are aware, the Sanitation Department has established strict rules concerning attendance. These regulations were clearly laid out to you and other newly hired Sanitation Workers in the training you received. Additional counseling you received reinforced how seriously we consider these rules to be.

"Unfortunately, you showed by your actions that you were unwilling to abide by our procedures.

"When I received your letter, I personally reviewed your record again. I understand that you had personal problems and went to EAU to get help. However, you failed to follow Departmental procedures to notify your work location explaining your absences. While the Department seeks to assist employees with personal problems, participation in the Assistance Program alone will not preserve the job of any probationary employee who violated attendance regulations."

Petitioner duly commenced the instant CPLR article 78 proceeding seeking, *inter alia,* to have his termination set aside and to be restored to his former position. His central argument was that respondent's decision to terminate him was arbitrary, capricious and made in bad faith. The IAS court, finding that petitioner failed to demonstrate that respondent acted in bad faith, stated that it was "constrained to deny petitioner's application." We disagree.

It is well settled that the Department, in the absence of bad faith, has broad discretion in terminating probationary employees at any time, without a hearing and without stating the reasons for the discharge. *(Matter of York v McGuire,* 63 NY2d 760, 761 [1984], *affg* 99 AD2d 1023, 1024 [1st Dept 1984]; *Matter of Talamo v Murphy,* 38 NY2d 637, 639 [1976]; *Matter of Sheridan v Ward,* 125 AD2d 274, 275 [1st Dept 1986], *lv denied* 69 NY2d 609 [1987].) However, there is a narrow exception to this rule, providing for judicial review of the termination of a probationary employee where there is an issue regarding whether the termination was made in bad faith. *(Matter of Johnson v Katz,* 68 NY2d 649, 650 [1986]; *see*

*also, Matter of Montero v Lum,* 68 NY2d 253, 260-261 [1986].) Thus, the specific issue presented in the case at bar is whether or not the Department acted in good faith when it summarily dismissed petitioner within three weeks of his successful completion of the Department's own alcohol abuse program.

We take as an axiom that the burden of raising and proving bad faith rests upon petitioner's shoulders. *(Matter of Bergamini v Manhattan & Bronx Surface Tr. Operating Auth.,* 62 NY2d 897, 899 [1984]; *Matter of Sheridan v Ward, supra,* 125 AD2d, at 275.) In the instant case we hold that petitioner has, in fact, sufficiently established bad faith on the part of the Department.

Respondent should have removed the December 30, 1988 absence from AWOL status. There is no rational view, on this record, that petitioner was acting on whim and caprice by defying the rules regarding absenteeism. We observe that the very purpose of the departmental program he entered was to permit an individual who has an alcohol abuse problem to be rehabilitated and to begin anew and become a productive employee without fear of retribution. To give employees information about the Department's crisis and substance abuse programs, encourage them to participate, all the while assuring confidentiality and job security, and then, in short order, terminate an employee such as petitioner, who avails himself of the program, is Orwellian. We are particularly disturbed that the intradepartmental letter did not automatically result in a change of status. There is, in our view, *no* good-faith justification for classifying the December 30 absence as an AWOL, since the record unequivocally shows it to have been due to a crisis, as EAU Assistant Director Chestnut noted when asking the Department to reclassify it as a sick day.

We note that programs such as the EAU are to be hailed for the good work they do, which benefits not only the individuals assisted, but the employer and society as well. The timing of petitioner's discharge, approximately a month after his release from the hospital, sends a particularly chilling message to others who would seek help, but fear the stigma and retribution associated with admitting alcohol or drug dependency. Those brave enough to step forward and reclaim their lives from addiction deserve a badge of rehabilitation, not a scarlet letter. Petitioner should have been lauded, not fired, and permitted to work through his probationary period given that his work was apparently satisfactory and he committed no further infraction after the treatment. *(See, Matter of*

*Wilborn v Starr,* 58 AD2d 785, 786 [1st Dept 1977]; *cf., Matter of Johnson v Katz,* 116 AD2d 930, 931-932 [3d Dept 1986], *affd* 68 NY2d 649, *supra; Matter of York v McGuire, supra.)*

As to the November 28, 1988 AWOL, we believe petitioner was sufficiently disciplined by, *inter alia,* the warning letter. While we do not disturb the finding that his absence that day was unauthorized, it is not a sufficient predicate for termination, as the letter itself indicated. Thus, petitioner's dismissal was arbitrary and capricious and he should be reinstated to his former position.

Accordingly, the judgment of the Supreme Court, New York County (Leonard Cohen, J.), entered on November 28, 1989, which denied and dismissed petitioner's article 78 petition, should be reversed, on the law, and the petition granted, to the extent of vacating petitioner's termination by respondent Commissioner of the Department of Sanitation of the City of New York; restoring petitioner to his former position; and directing respondent to pay petitioner wages and benefits retroactive to his date of termination, without costs.

KUPFERMAN, J. P. (dissenting). While the situation presents an appealing case for the petitioner, and I would like to concur in the majority opinion, I must dissent from the determination.

There was, here, no bad faith, and the IAS court, in accordance with precedent, properly determined that the probationary employee could be dismissed.

MILONAS, KASSAL and ELLERIN, JJ., concur with CARRO, J.; KUPFERMAN, J. P., dissents in an opinion.

Judgment, Supreme Court, New York County, entered on November 28, 1989, reversed, on the law, and the petition granted, to the extent of vacating petitioner's termination by respondent Commissioner of the Department of Sanitation of the City of New York; restoring petitioner to his former position; and directing respondent to pay petitioner wages and benefits retroactive to his date of termination, without costs and without disbursements.