■ LESTER THOMAS, Respondent, v CITY OF NEW YORK et al., Appellants.—Judgment of Supreme Court, New York County (William J. Davis, J.), entered August 9, 1989, which granted petitioner-respondent's petition filed pursuant to CPLR article 78 and ordered and adjudged that petitioner-respondent be reinstated as a probationary correction officer with payment of back wages is, unanimously reversed, on the law and on the facts, and the determination of the respondent Commissioner of the Department of Correction, terminating the petitioner-respondent as a probationary correction officer, is reinstated and the petition dismissed, without costs.

On August 27, 1988 petitioner-respondent Lester Thomas, then a probationary correction officer, was assigned to the 7:00 A.M. to 3:31 P.M. tour as the male medication officer on the upper corridor of building 8 Main at the Rikers Island correctional facility. On that date, an inmate, who had set a fire in his cell and was escorted to the facility clinic at approximately 8:10 A.M., claimed that he had been assaulted by several correction officers. Deputy Warden Ralph McGrane investigated the incident. In his report Deputy Warden McGrane stated that the complaining inmate identified Correction Officer (C.O.) Darryl Landres as one of the officers who had allegedly assaulted him.

The petitioner-respondent along with another correction officer, Victor Santiago, voluntarily submitted written statements stating that they had observed C.O. Landres in the upper corridor at his post between 7:30 A.M. and 8:15 A.M. Since Deputy Warden McGrane observed that the text of these statements was all written in C.O. Landres' handwriting and merely signed by Officers Thomas and Santiago, he asked the petitioner-respondent if he was absolutely sure that he

understood what he had signed. Deputy Warden McGrane then asked him directly if he in fact was watching C.O. Landres continuously for the entire 45-minute period from 7:30 A.M. to 8:15 A.M. After the petitioner-respondent assured the Deputy Warden that he indeed was watching C.O. Landres for the entire time indicated, the Deputy Warden instructed the petitioner-respondent to write out and resubmit his own report.

The petitioner-respondent submitted two additional handwritten reports both dated August 31, 1988. In one the petitioner stated that he was assigned to "Male Medication" on the second floor during the 7:00 A.M. to 3:31 P.M. tour on August 27, 1988 and that he observed Correction Officer Landres "on post in the Corridor between the hour *[sic]* of 7:15 A.M. and 8:00 A.M.". In the other the petitioner-respondent stated that he was present on the 7:00 A.M. to 3:31 P.M. tour on August 27, 1988, was assigned to "Male Medication" on the second floor and was in the corridor on the second floor administering medication from 7:15 A.M. to 10:00 A.M.

Deputy Warden McGrane noted that petitioner-respondent's post and C.O. Landres' post were approximately 150 yards apart and separated by a door with a 1-foot-by-1-foot window. Deputy Warden McGrane noted also that Santiago's post was around a corner from Landres' post. Thus the Deputy Warden determined that to observe C.O. Landres both men would have to neglect their duties and leave their own posts. Based on his observations, Deputy Warden McGrane concluded that both the petitioner-respondent and C.O. Santiago had submitted false reports. McGrane submitted a report to the Warden in which he recommended that the petitioner-respondent be dismissed. The Warden agreed and forwarded his own recommendation to the Commissioner who in turn approved the dismissal. The petitioner was dismissed from his position as a probationary correction officer on October 14, 1988.

The petitioner-respondent applied for unemployment insurance and found that he was ineligible for benefits because he had been discharged for cause. A hearing was held after which the Department of Labor ruled that the petitioner-respondent was eligible to receive benefits without any disqualifying conditions. The petitioner-respondent then commenced this action seeking a judgment restoring him to his position as a probationary correction officer.

The IAS court acknowledged that the appropriate rule is that a probationary employee may be discharged without a hearing and without a statement of reasons in the absence of

any demonstration that the dismissal was for a constitutionally impermissible purpose or in violation of statutory or decisional law *(Matter of York v McGuire,* 63 NY2d 760, 761). However, the court erroneously concluded that the petitioner-respondent demonstrated that the respondent-appellant Commissioner acted arbitrarily and capriciously, and in bad faith in connection with this termination. Although the IAS court acknowledged that it was not bound by the conclusions of the Administrative Law Judge in the Department of Labor proceeding, it relied on those conclusions in reaching its decision in this action where the issues and applicable rules are different.

In fact, the decision of the Department of Labor is irrelevant to the proceeding before this court. The record herein demonstrates that the Commissioner acted neither arbitrarily nor capriciously nor in bad faith in dismissing the petitioner. The dismissal was in fact rationally based and not constitutionally impermissible or contrary to law. Concur—Murphy, P. J., Ross, Ellerin and Smith, JJ.