■ In the Matter of VICTOR SOTO, Appellant, v RICHARD KOEHLER, as New York City Correction Commissioner, et al., Respondents.—Order of the Supreme Court, New York County (David Saxe, J.), entered October 31, 1989, dismissing the petition brought pursuant to CPLR article 78 to annul respondents' determination terminating petitioner as a Correction Officer, is affirmed without costs and disbursements.

The facts herein are simply stated. Petitioner, a tenured Correction Officer, was involved in an auto accident. It was alleged he was driving while impaired by alcohol. He entered a plea agreement with the respondent Department of Correction in settlement of disciplinary charges by agreeing to a probationary period of one year from January 20, 1988 through January 20, 1989. On January 19, 1989, petitioner was terminated by respondent with no reason stated. Thereafter, while initially denying petitioner's application for unemployment compensation, an Administrative Law Judge found that petitioner was terminated because he was late for work on eight occasions and that this did not constitute misconduct warranting denial of unemployment benefits. In his article 78 petition, petitioner admitted the eight latenesses. He explained that one was due to a snowstorm. On the other seven occasions of lateness, petitioner asserted five were due to transportation problems and two of these were attributable to the respondent Correction Department's tour bus being late. Appellant, in his petition, conceded five unexplained latenesses. He emphasized their minimal nature and asserted termination for such a reason demonstrated bad faith on the part of respondent Department.

When we consider the termination of Civil Service employees, the extent of our review differs according to the status of the employees. Thus, a tenured employee protected by the full panoply of rights accorded by the Civil Service Law must be given a hearing before termination or any other disciplinary action is taken (Civil Service Law § 75). Our review in such a case is to decide whether substantial evidence was presented at the hearing supporting the determination. *(Matter of Acosta v Wollett,* 55 NY2d 761, 763.) Further, where we find such substantial evidence supported the factual determination, our further review of the sanction imposed is restricted to whether the penalty is so disproportionate to the offense as to be shocking to one's sense of fairness *(Matter of Pell v Board of Educ.,* 34 NY2d 222, 233).

However, when we deal with the termination of probationary employees, a different standard of review is to be applied.

A probationary employee can be dismissed "without a hearing and without a statement of reasons in the absence of any demonstration that dismissal was for a constitutionally impermissible purpose or in violation of statutory or decisional law" *(Matter of York v McGuire,* 63 NY2d 760, 761). Judicial review of such a determination "is limited to an inquiry as to whether the termination was made in bad faith." *(Matter of Johnson v Katz,* 68 NY2d 649, 650.) The burden of raising and proving such "bad faith" is on the employee and the mere assertion of "bad faith" without the presentation of evidence demonstrating it does not satisfy the employee's burden *(see, Matter of Cortijo v Ward,* 158 AD2d 345).

Applying these principles to the case before us, it is apparent that petitioner has failed to meet his burden of showing that the respondent's determination terminating him was taken in "bad faith". Obviously, lateness would be an appropriate consideration in any decision made by an employer to retain or discharge an employee. Further, the respondent Department is entitled to expect that its employees will leave home allowing enough time for transportation and weather delays. This is especially true with respect to employees of the Department whose duties involve the safety of the institution and the inmates. Thus, there was a demonstrably rational basis for petitioner's termination *(see, Thomas v City of New York,* 169 AD2d 496).

While the dissent cites *Kroboth v Sexton* (160 AD2d 126) as "virtually identical" to the instant one, that case is inapposite. In *Kroboth,* a probationary employee was dismissed after an absence to obtain treatment for alcoholism, and we found this action to be "bad faith" on the part of the Sanitation Department *(but see, supra,* at 131, Kupferman, J., dissenting, finding no bad faith). In fact, it was noted there: "The timing of petitioner's discharge, approximately a month after his release from the hospital, sends a particularly chilling message to others who would seek help, but fear the stigma and retribution associated with admitting alcohol or drug dependency" *(Kroboth v Sexton, supra,* at 130).

The dissent further makes much of the finding of the Administrative Law Judge that upon the hearing of petitioner's application for unemployment benefits there was insufficient evidence of misconduct. However, as we have noted previously, such an administrative determination is "irrelevant" to a "bad faith" determination "where the issues and applicable rules are different." *(Thomas v City of New York, supra,* at 498.)

Finally, the dissent independently assesses petitioner's work record, asserting "there were no complaints other than a minor, technical type of offense during the probationary time" but concludes that he has had "overall, a good work record". Our function, however, should not be to "second guess" administrative determinations made by various agencies and departments. Judicial review, in this case, as noted, is simply to determine if petitioner has shown bad faith on the part of the respondent. This, petitioner did not do. Concur—Murphy, P. J., Kupferman, Asch and Kassal, JJ.

Carro, J., dissents in a memorandum as follows: The general question presented in this case is what constitutes bad faith in the discharge of a probationary employee. The specific answer in the matter before us is termination of petitioner on the last day of the probationary period, on grounds of excessive lateness, where all but two of eight instances of lateness were apparently excusable, where he was late but once after a warning, and where thirteen captains who had supervised or worked with petitioner, a corrections officer, wrote a letter to the respondent Commissioner praising him and requesting his reinstatement.

Petitioner, Victor Soto, worked for the New York City Department of Correction from April 23, 1984 until January 19, 1989. Following an incident not relevant to this case save for its result, petitioner agreed to complete a second probationary period from January 20, 1988 through January 20, 1989.

During this time, petitioner was late for work on a number of occasions.* Between January and November 1988, petitioner accrued seven latenesses; as a result, he was given a corrective interview. He was late but one more time after this warning. Nonetheless, he was terminated on January 19, 1989, his last day as a probationary employee; this termination was effectuated by letter dated that day, which stated no reason for the termination.

Shortly thereafter, on February 8, 1989, respondent received a letter from 13 of his captains at the Anna M. Kross Center at Rikers Island, where petitioner had worked. As here perti-

---

* Petitioner has maintained throughout that six of the latenesses were excusable; one was due to a snowstorm and five were due to transportation problems in getting to Rikers Island. Supreme Court gave credence to the excusable nature of some of these acknowledging that "petitioner explains some of those [eight] latenesses". In any event the total time lost was 3 hours and 10 minutes, less than one-half day in the course of an entire year.

nent, the letter stated that petitioner's "on duty work performance and attitude was excellent"; "he was a pleasure to supervise"; "[w]e * * * all agree this officer * * * was well above the average". It concluded with the plea that the Commissioner give petitioner "the opportunity to prove himself worthy of one last chance." Respondent nevertheless declined to reinstate petitioner.

Following his termination, petitioner applied for unemployment benefits. Because respondent claimed the termination was for misconduct, petitioner's claim was initially denied. This determination was subsequently overruled by an Administrative Law Judge, who found that, "[petitioner] was disqualified on the basis of a *report from the employer* that he was excessively late while on probation" (emphasis added), but that some of the days in question involved latenesses which were not due to petitioner's own fault. The ALJ thus overruled the initial determination stating that "there is insufficient evidence of misconduct on [petitioner's] part" to deny unemployment benefits.

On or about May 17, 1989, petitioner duly commenced the within CPLR article 78 proceeding challenging his termination. The Supreme Court dismissed the petition, holding that while termination of a probationary employee may be challenged if motivated by bad faith or done with an impermissible purpose, the termination herein was "motivated by excessive latenesses". The court found no evidence of bad faith or "impermissible reasons" by respondent. I disagree and would accordingly reverse.

The spectrum of cases concerning bad faith discharge of probationary employees is fairly narrow. However, where bad faith is alleged, judicial review of the circumstances surrounding the termination is permitted. *(Matter of Johnson v Katz,* 68 NY2d 649, 650.) This is, in part, because a probationary employee may be discharged without a hearing or even a statement of the reasons underlying the termination. *(Matter of York v McGuire,* 63 NY2d 760, 761; *Kroboth v Sexton,* 160 AD2d 126.) While a heavy burden of proof is upon the petitioner *(Matter of Bergamini v Manhattan & Bronx Surface Tr. Operating Auth.,* 62 NY2d 897, 899), this does not serve to foreclose a petitioner who has a valid claim of bad faith discharge from asserting it and recovering his job if he can shoulder the burden. *(See, Kroboth v Sexton, supra.)* In my opinion, petitioner herein has sufficiently demonstrated that the determination to terminate him was made under circumstances constituting bad faith.

Recent termination cases are generally divided into two categories. First, there are the cases which uphold determinations as appropriate and to be accorded substantial deference. *(See, Matter of Trotta v Ward,* 77 NY2d 827; *Matter of Johnson v Katz, supra; Thomas v City of New York,* 169 AD2d 496.) In contrast, there are cases in which the terminations are the result of bad faith and thus require judicial intervention. *(Kroboth v Sexton,* 160 AD2d, *supra,* at 129.) Needless to say, respondent argues that this case falls into the former category, while petitioner asserts that it belongs in the latter.

In order to categorize the case at bar, I believe it is necessary to consider it in light of the recent cases of *Matter of Trotta (supra),* decided by the Court of Appeals, and *Thomas v City of New York (supra),* decided by this Court, as well as the precedent set last year by *Kroboth v Sexton (supra).* In *Matter of Trotta,* Trotta, a veteran police officer, tested positive for use of marijuana, the possession of which is a criminal offense (Penal Law § 221.05). The Court of Appeals reinstated the determination of the Police Commissioner dismissing Trotta, despite the fact that he was not a probationary employee, noting that the Commissioner's determination was "entitled to substantial deference 'because he, and not the courts, is accountable to the public *for the integrity of the Department'* ". *(Matter of Trotta v Ward supra,* at 828, quoting *Matter of Berenhaus v Ward,* 70 NY2d 436, 445 [emphasis added].) Similarly, in *Thomas v City of New York,* this Court reinstated a determination of dismissal where a probationary Corrections Officer was terminated after filing false reports concerning an incident in a correctional facility. Significantly, both of these cases involved conduct which was improper and arguably illegal.

Thus, it is not arbitrary and capricious to discharge an employee whose conduct undermines either the integrity of his employer or his employer's ability to rely upon his trustworthiness. *(Matter of Trotta v Ward, supra.)* However, the termination of an employee who commits minor transgressions, and, upon being duly warned, ceases the offending conduct and otherwise satisfactorily performs his duties, should not be sustained. In *Kroboth v Sexton (supra),* this Court reinstated a probationary sanitation worker who had taken a day of AWOL absence, and following appropriate warnings, was fired after a second alleged AWOL absence, despite both a confirmed excuse and letters of support from the Department.

The case herein appealed from not only tracks the factual

setting of *Kroboth (supra)*, but is virtually identical. Like Kroboth, petitioner was warned that his latenesses were of concern; similarly, there was but one more instance of the objectionable conduct. An intra-departmental letter was written on behalf of Kroboth in an effort to render the second AWOL a nullity; so too, in the case at bar, thirteen supervisors tried to intercede on petitioner's behalf, to no avail, although the sheer number of what should have been powerful supporters is compelling. Also, just as in *Kroboth,* there were no complaints other than a minor, technical type of offense during the probationary time in question. Indeed, petitioner herein had been employed by respondent for several years with, overall, a good work record, notwithstanding the second probationary period, thus placing him in an even better position than the petitioner in *Kroboth.*

Finally, it is also noteworthy that although no reasons need be given for a discharge, respondent, at the unemployment benefits proceedings, furnished the grounds for dismissal, i.e. lateness and lateness alone. *(Cf., Matter of Johnson v Katz,* 68 NY2d, *supra,* at 650.) While the courts are not bound by the conclusions of an ALJ in Department of Labor proceedings *(Matter of Thomas v City of New York, supra),* this does not mean we have to totally disregard relevant information that can be gleaned therefrom.