■ In the Matter of GEORGE DASH, Respondent, v LEE P. BROWN, as Police Commissioner of the City of New York, et al., Appellants. In the Matter of CHERLYN PATRICK, Respondent, v LEE P. BROWN, as Police Commissioner of the City of New York, et al., Appellants. [604 NYS2d 108] —Order and judgment (one paper) of the Supreme Court, New York County (Martin Evans, J.), entered on or about June 19, 1992, granting CPLR article 78 petitions to annul and vacate the determination of respondent Police Department of the City of New York terminating the services of petitioner George Dash (appeal #50027), and order and judgment (one paper) of the same court and Justice, entered on or about the same date, granting the same relief to petitioner Cherlyn Patrick (appeal #50028), and restoring petitioners to their positions as probationary police officers with back pay, are unanimously reversed, on the law and facts, and the petitions dismissed, without costs or disbursements.

In April 1991, a police officer from the 113th precinct responded to a 911 call made by Anthony Patrick, the ex-husband of petitioner Patrick, who was then petitioner Dash's girlfriend. Mr. Patrick told the responding officer that his 7 and 10 year old sons had been physically abused by his ex-wife and by Dash. The officer was told by the boys that in recent weeks they had been forced to remove their clothes and handcuffed while being beaten with a belt. The two boys had scars and bruises on their bodies.

After an investigation, the Field Internal Affairs Unit (FIAU) issued a report noting that the older son stated that the petitioner Dash had hit him approximately 30 times with a belt on the legs and back after having him remove his

clothes and lie face down on the bed. The younger son was ordered into the bedroom and told to remove his clothes and lie down on the bed. Petitioner Dash then hit him 12 times with a belt on the buttocks and in the middle of his back. Petitioner Patrick acknowledged disciplining her sons sometime in late March 1991 by handcuffing them. The only explanation she offered as to why there were scars on one son's arms about a month after the incident was that she had not known that he bruised so easily. Dash admitted to being present during the handcuffing, and to disciplining one son on another occasion, at the mother's request, by striking him across the buttocks with a pocketbook strap.

The FIAU report concluded that the allegation that Dash and Patrick had abused the children by inflicting physical injuries was "substantiated". Doctors at Queens General Hospital concluded that marks on the older son's legs were consistent with being struck with a belt and that marks on the biceps of the younger son were consistent with the use of handcuffs as described by that son. The report further stated: "While the reasons for attempting to change the children's behavior may have been justified, the physical beatings described by [the] children, and admitted to by [Dash and Patrick], amounted to excessive corporal punishment * * * both [Dash and Patrick] were present at the time * * * and knew that both children were being handcuffed. Additionally, both officers were present during the beating with the strap, and neither officer attempted to stop the other one from the strikes which caused physical injuries to the children". In August 1991, both Dash and Patrick were terminated as probationary officers.

The IAS Court granted the petitions, concluding that there was no evidence that any sex crimes had been committed, and that this was not a case of persistent child abuse but of only one incident.

As probationary employees, petitioners were subject to being terminated without a hearing and without any reasons stated therefor (Matter of Rivoli v Stern, 160 AD2d 601, 602). In challenging their dismissals, petitioners must establish by competent evidence that the terminations were made in bad faith, i.e., for constitutionally impermissible reasons or in violation of statutes or policies established by decisional law (supra).

While both petitioners assert that the terminations were made in bad faith because they were based on an "unfounded

complaint" of child abuse, the record indicates that the allegations were not only *not* unfounded, but essentially based on the admissions of the two petitioners following an extensive investigation. The IAS Court minimized their conduct, finding that the corporal punishment was administered at the mother's request and was not persistent in nature. However, the evidence indicates that the physical treatment of the boys was excessive and careless. The injury marks on the sons' bodies were clearly visible some time after the incidents and consistent with the children's charges that a belt and handcuffs were used; the mother revealed a startling indifference in stating that she had not known that one of the sons bruised so easily; neither petitioner attempted to interrupt the other during the handcuffing or the beating with the strap. Certainly, this evidence provided a rational basis for the terminations of the petitioners as probationary officers *(see, Matter of Atkinson v Koch,* 161 AD2d 152, 153-154), and the IAS Court erred in substituting its opinion for that of the administrative body as to the severity of the acknowledged behavior *(see, Matter of Soto v Koehler,* 171 AD2d 567, 569, *lv denied* 78 NY2d 855).

Finally, the petitioners are not entitled to a "name-clearing" hearing, since the record does not indicate that the respondents publicly disseminated stigmatizing reasons for the termination of the petitioners *(see, Matter of Ortiz v Ward,* 155 AD2d 245). Concur—Wallach, J. P., Ross, Asch and Rubin, JJ.